IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CLAY O'NEAL FITZGERALD, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 7:19-cv-00825 |
| BOTETOURT COUNTY, VIRGINIA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Clay O'Neal Fitzgerald ("Fitzgerald") filed this action alleging retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA").[2] I **GRANT** Defendant's motion for summary judgment (Dkt. 32) and dismiss this action with prejudice.

I.   BACKGROUND

Defendant Botetourt County (the "County") hired Fitzgerald in 2007 as a member of the Department of Fire and EMS ("Department"). He was forty-seven years old at the time and began his career with the County as Fire Officer 2, Instructor 2, and EMT-B. Pl. Opp. Br., Ex. 1; Fitzgerald Dep., 11:21-22, 15:16-17. Fitzgerald found success with the County being promoted to logistics technician in 2010 and then to lieutenant in 2016. Id. at 17-18. Fitzgerald became battalion chief in 2017, placing him second in command and earning a higher pay grade. Id. at 18-19.

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] Fitzgerald alleged claims of age discrimination (Count I) and retaliation (Count II), but withdrew the age discrimination claim in his memorandum in opposition to Defendant's motion for summary judgment (Dkt. 38) and is now proceeding only on Count II for retaliation.

Fitzgerald complained of age discrimination despite his success with the County. For example, Fitzgerald claims that between 2010 to 2012 he was denied opportunities to advance, specifically the opportunity to "ride the seat"[3] until Jeff Beckner became the County fire chief and promoted him to lieutenant. Id. at 20-27.

### A. Fitzgerald's 2014 Grievance

In May 2014, Fitzgerald submitted a written grievance to former County Administrator Kathleen Guzi ("Guzi") identifying twelve "inappropriate comments" which he contends amounted to age discrimination. Id. at 27, 31:4-7; 32:2-19; Pl. Opp. Br., Ex. 5. Fitzgerald titled the grievance "Issues That Reflect Age Discrimination and Hostile Workplace Environment Based on Age with Jason Ferguson and Andrew Moore" Id. At the time, the County did not have a named fire chief, so the County Administrator delegated operational responsibilities within the Department to a committee of fire safety officers which included Jason Ferguson ("Ferguson") and Andrew Moore ("Moore") to whom Fitzgerald reported for EMS and training matters. Fitzgerald contends that Ferguson and Moore made comments which created a discriminatory work environment. Fitzgerald Dep., 32-33.

One comment involved a conversation with Ferguson regarding the difference in communication between young people and those Fitzgerald's age. Fitzgerald also raised concerns about comments by Moore that Fitzgerald should retire and statements about dinosaurs and fossils which Fitzgerald believed related to his age. Pl. Opp. Br., Ex.5. A third listed comment speculated that Fitzgerald's inconsistent work schedule was attributed to his age and only affected two individuals over forty years old, including himself. Id. The remainder of the

---

[3] Fitzgerald described "riding the seat" as serving as the officer on the fire engine and gaining experience as an officer. Fitzgerald identified three younger EMT firefighters who were allowed to "ride the seat." Fitzgerald Dep., at 23. None of the three younger EMT firefighters became a battalion chief. Id. at 24-25.

concerns which Fitzgerald raised in his grievance discussed his dissatisfaction with aspects of his job, without reference to age discrimination, such as needing additional support to perform his job, feeling ignored by Ferguson and Moore, and wanting to "ride the seat." Id. Guzi held a meeting with Fitzgerald, battalion chief David Firestone ("Firestone"), and the HR supervisor Mary Blackburn ("Blackburn") about his complaint. Firestone Dep., 58:16-23; 59:17-60:14; 68:1-10; Fitzgerald Dep., 29:9-15. Fitzgerald followed up with Blackburn by email on October 21, 2014, but never received a response. Fitzgerald Dep., 35:4-7; 141:14-23; Pl. Opp. Br., Ex. 7.

Between 2014 and 2017, Fitzgerald made no other complaints about suspected age discrimination because he was "afraid [he] was going to lose [his] job if [he] repeated it again." Pl. Opp. Br., Ex. 1; Fitzgerald Dep., 143:10-23. Fitzgerald gave no specifics, however, as to why he thought he might lose his job if he complained further about age discrimination in the Department and offers no evidence that he suffered any retaliation in the immediate aftermath of his 2014 grievance. In fact, the County promoted Fitzgerald to lieutenant and then battalion chief during this period.

### B. Fitzgerald's 2017 Complaint

In May 2017, County Administrator Gary Larrowe ("Larrowe") hired Matthew Britt ("Britt") as the new fire chief. Firestone Dep., 15:8-21; Britt Dep., 7:2-8; Fitzgerald Dep., 109:22-24. Britt wrote an article in September 2016 calling for older firefighters to retire from their jobs to make room for younger workers. Pl. Opp. Br., Ex. 10. Fitzgerald claims that this article shows Britt's discriminatory bias against older firefighters such as Fitzgerald. Id. at 5. Fitzgerald does not produce evidence that he complained to his supervisors about Britt or this article.

In July 2017, Fitzgerald complained to Larrowe about hostility and age-related discrimination by Ferguson since 2014. Pl. Opp. Br., at 6. Fitzgerald met with Larrowe, Britt, and Blackburn and complained generally of feeling marginalized, which he attributed to his age but did not provide evidence to support such allegation. Firestone Dep., 35:1-6; Fitzgerald Dep., 69:2-70:1. The County took no action on Fitzgerald's complaint. Moorman Dep., 22:2-5; Ferguson Dep., 19:17-25; 20:5-11. Fitzgerald contends that after complaining of age discrimination in 2017 the retaliatory conduct against him began.

### C. The Manhunt Operation

Fitzgerald complained about discipline he received in August 2017 when he assisted the Botetourt County Sherriff's Office in a manhunt in the Eagle Rock section of the County. Firestone, the on-duty battalion chief that day, received a request that the fire department provide a support trailer as part of the manhunt operation. On his day off, Fitzgerald took it upon himself to move the trailer to the requested area. Firestone Dep., 37:9-23; Fitzgerald Dep., 71:21-72:3, 108:5-14. Fitzgerald received a written reprimand for deploying County equipment without Britt's approval and coming back on the clock when he was not scheduled to work. Pl. Opp. Br., Ex. 11; Britt Dep., 16-17. The County claims that other employees who were not eligible for overtime and who were not as highly compensated as Fitzgerald could have performed the same service. Larrowe Dep., 26. Britt gave a written reprimand to both Fitzgerald and Firestone – telling them that he did so at Larrowe's direction. Pl. Opp. Br., Exs. 11, 12; Fitzgerald Dep., 73:1-75:15; Firestone Dep., 39:8-41:12. Fitzgerald complained to Blackburn that the written reprimand for aiding the Sheriff's Office was in retaliation for complaining of age discrimination. Fitzgerald Dep., 73:1-16. Fitzgerald contends that Blackburn scolded him for

4

raising age discrimination and retaliation, stating: "you are not allowed to say such things." Id., 73:14-21.

### D. Delayed Training Request

In December 2017, Fitzgerald submitted a career training request for February 2018. Pl. Opp. Br. at 12. Ferguson did not approve the request until two days before the training was held provided Fitzgerald could obtain coverage of his shift. Fitzgerald claimed that Ferguson discriminated against him by approving the request to attend the training so late while responding quicker to younger employees. Id.; Fitzgerald Dep., 75:14-76:16, 143:24-144:24. Fitzgerald did not produce evidence naming the younger employees whom he believes received quicker responses to their later January requests. Pl. Opp. Br. at 12.

### E. Ambulance Procurement Prohibition

Outside of his employment with the County, Fitzgerald worked as a salesman for an ambulance company which the County had approved because it provided Fitzgerald with specialized knowledge which was beneficial to the County. Firestone Dep., 45:3-10, 76:24-77:14 Fitzgerald Dep., 129:15-130:8. Larrowe, however, worried that this work could create a potential conflict of interest between the County and Fitzgerald; so by letter dated April 7, 2017, Larrowe advised Fitzgerald that he could not have any involvement in the County's purchase of ambulances. Larrowe Dep., 28:5-30:15. Fitzgerald testified that Larrowe told him that this prohibition did not extend to all vehicles and that Chief Britt had said that non-emergency vehicles "were okay." Fitzgerald Dep., 130:6.

5

**F. The Brush Truck Purchase**

In April 2018, the County purchased a brush truck[4] for the Glen Wilton Voluntary Fire Department. Fitzgerald's involvement and the circumstances under which the purchase occurred were questioned as it became apparent that Fitzgerald directed the purchase of the truck without having appropriate authority under County regulations to authorize the purchase. Fitzgerald's efforts to purchase the brush truck became the "but for" cause of his termination, described as the "straw that broke the camel's back." Larrowe Dep., 27:18-28:1; Moorman Dep., 26:14-24; Ferguson Dep., 10:17-11:2, 12:6-9.

The authority to purchase or expend funds on behalf of the County is governed by the Purchasing Policy and Procedures Manual of Botetourt County, Virginia ("Purchasing Policy"). Section 1.2 of the Purchasing Policy provides as follows:

> 1.2 PURCHASING AGENT
>
> The County Administrator is designated the purchasing agent and shall serve as the principal public purchasing official for the County. The purchasing agent may delegate the administrative purchasing responsibility to a responsible subordinate. The Purchasing Agent Shall:
>
> A. Purchase or supervise the purchasing of all goods, services, insurance and construction needed by the County;
>
> B. Exercise direct supervision over the County's store fund and general supervision over all other inventories of goods belonging to the County;
>
> C. Sell, trade or otherwise dispose of surplus goods;
>
> D. Establish and maintain programs for specifications development, contract administration and inspection and acceptance, in cooperation with the public agencies using the goods, services, and construction.

Section 1.3 of the Purchasing Policy addressed violations and potential disciplinary action as follows:

---

[4] A brush truck is an emergency vehicle with greater off-road capabilities than a typical emergency vehicle.

> 1.3 VIOLATIONS
>
> Any purchase or contract entered into by any elected or appointed County official, department head or employee that violates the provisions of Botetourt County's Purchasing Policy and Procedures may be the personal and financial responsibility of that individual. Violation of these policies and procedures shall be grounds for disciplinary action to include termination.

Def. Reply Br., Ex.1.

Purchasing authority runs through the County Administrator under section 1.2 and extends to employees such as Fitzgerald only if delegated. Here, Fitzgerald did not have the expressly delegated authority of Larrowe or Britt while he was fire chief to authorize the purchase of a vehicle on behalf of the County. Larrowe and Deputy County Administrator David Moorman instead stated that they were "surprised" by the acquisition of the brush truck. Larrowe Dep., 35:9-21; Moorman Dep., 18:19-19:8.

In September 2017, then Chief Britt began to investigate the possibility of the County purchasing a brush truck for the Glen Wilton Voluntary Fire Department. Pl. Opp. Br., Ex. 15 at 1. In that effort, Susan Tincher ("Tincher"), the County's Purchasing Manager, provided Britt on September 29, 2017, quotes from local dealers for the purchase of a brush truck. Tincher then followed up with Britt and Fitzgerald by email dated October 4, 2017, inquiring about the status of moving forward with the purchase. Pl. Opp. Br., Exs. 14, 15. On November 3, 2017, Britt emailed the specifications for three potential brush trucks to the Glen Wilton Chief for consideration of which vehicle Glen Wilton preferred. Pl. Opp. Br., Ex. 15 at 3. Britt left his employment with the County as fire chief on November 20, 2017. The following day, the Glen Wilton Chief advised Fitzgerald that he preferred the Ford vehicle. Id. at 4.

Despite having no authority to authorize the County to move forward with purchasing the brush truck, Fitzgerald continued to pursue that effort after Britt left the Fire Department. To that

end, Fitzgerald sent an email on November 22, 2017 to Ferguson, who had budgetary but not spending authority over the fire department budget, confirming the source of the funds to purchase the truck. Pl. Opp. Br., Ex. 15 at 6. Fitzgerald copied Larrowe on this email who never responded either authorizing the truck purchase or declining to allow it to proceed. Id. Ultimately, Ferguson confirmed the availability of sufficient County funds within the budget to purchase the truck. Ferguson merely provided budgetary guidance as to the source of the funds to pay for the truck, which was within his authority. Ferguson had no purchasing authority and did not authorize the purchase of the truck.

On December 7, 2017, Fitzgerald emailed Tincher about next steps to purchase the brush truck, described to her the budgetary process to pay for the truck, and requested how to execute a purchase order. Id. at 8. Ferguson was not included in this email. Id. The next day on December 8, 2017, Tincher issued a purchase order listing Fitzgerald listed as the contact person for the County. Pl. Opp. Br., Ex. 16.

Questions about the purchase of the brush truck began to surface in March 2018 shortly before it was delivered. On March 16, 2018, Fitzgerald emailed Larrowe about the truck, summarizing the purchase of the new truck and discussing the use of the older equipment at Glen Wilton being replaced. Pl. Opp. Br., Ex. 17.

On March 30, 2018, Tony Zerilla ("Zerilla"), Botetourt's Finance Director, requested that Fitzgerald provide "a signature of approval on the invoice" for the brush truck. Larrowe Dep., 46:6-12; Pl. Opp. Br., Ex. 18. Zerilla explained that the invoice had gone "through [a] side of the payables" which was not normal. Id.

By email on April 27, 2018, Fitzgerald alerted the Department to the arrival of the brush truck. Pl. Opp. Br., Ex. 21. On April 30, 2018, Larrowe responded to Fitzgerald's email asking

8

how the truck was paid for, why Fitzgerald was involved in the purchase, and who authorized it. Id; Larrowe Dep., 50:21-51:21; Fitzgerald Dep., 98:9-99:1. Fitzgerald replied stating that he inherited the project from Britt who initiated the process of purchasing the truck and that he moved forward with the purchase because "it never occurred to [him] that Britt would have executed a bid process for something without approval." Pl. Opp. Br., Ex. 22.

On April 26, 2018, Moorman, Ferguson, and Blackburn had a meeting which Fitzgerald believes was to plan his termination. Pl. Opp. Br., Ex. 19; Fitzgerald Dep., 100:15-22. Handwritten notes from that meeting outline particular policies including 2.7.3 "Purchasing and Procurement; 2.7.10 Standards of Conduct. Insubordination violation of a directive from Gary." Id. These policies are cited in Fitzgerald's termination letter three weeks later, on May 16, 2018. Pl. Opp. Br., Ex. 20. Fitzgerald contends that this meeting was held to plan his termination and for those in attendance to develop the reasons for his firing.

The County terminated Fitzgerald on May 16, 2018, in a five-page letter laying out in length six categories of policy violations to justify Fitzgerald's termination. Pl. Opp. Br., Ex. 20. The first category was Fitzgerald's violation of Personnel Policy 2.73 Purchasing and Procurement for the unauthorized brush truck purchase. Discussion of the unauthorized purchase is mentioned throughout the termination letter. Id. at 1-3. Specifically, the County noted that Fitzgerald did not "have the authority to make [the purchase], nor did [he] seek or receive appropriate authorization." Id. at 2. Listed second was a violation of Personnel Policy 2.75 Outside Employment for his employment with Osage Ambulance, which included again his unauthorized purchase of the brush truck. Id. at 2. Listed third was twelve violations of Personnel Policy 2.7.10 Standards of Conduct for disobeying orders, the untimely management of a superior's complaint, angrily exiting a management team meeting, creating a hostile offensive

9

work environment for staff, making decisions independent of his supervisors, and the brush truck purchase. Id. at 2-3. Listed fourth was three violations of <u>Personnel Policy 2.17 Discrimination, Harassment, Retaliation and Workplace Romance Policy</u> for an employee's hostile work environment allegation against Fitzgerald on January 14, 2018, a HR reported retaliation claim on April 5, 2018, dealing with the same employee, and unauthorized actions on behalf of the County after an incident at Kroger. Id. at 1, 3. The fifth category listed twelve violations of <u>Fire-EMS Policy Admin-003 Conduct & Prohibited Activities</u> for creating a hostile work environment, retaliation, neglecting responsibilities, disobeying orders, and for failing to respond to an email on April 30, 2018 about his involvement in the brush truck research. Id. at 13. The final termination category was Fitzgerald's failure to perform appropriately and responsively the duties of his position. Id.

The County primarily contends at the summary judgment stage that it had a legitimate non-retaliatory reason to terminate Fitzgerald because he authorized the purchase of the brush truck in violation of the Purchasing Policy. Fitzgerald claims that the grounds for termination had never been discussed with him or mentioned as "negative" and thus are pretextual reasons in support of his termination. Fitzgerald Dep., 122:2-129:14, 130:22-135:5, 137:18-141:13.

## II.     STANDARD OF REVIEW

To grant summary judgment, the court must conclude that the pleadings and submissions taken in the light most favorable to plaintiff, show that there is no genuine issue as to any material fact. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317 (1986); <u>Porter v. U.S. Alumoweld Company</u>, 125 F.3d 243, 245 (4th Cir. 1977); <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 248-249 (1986). The court may not resolve disputed facts, weigh evidence, or determine credibility, <u>Russell v. Microdyne Corp</u>., 65 F.3d 1229, 1239 (4th Cir. 1995); rather, the

nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

### III.  ANALYSIS

A plaintiff may establish a retaliation claim under the ADEA either by direct evidence or the burden shifting scheme under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). That is, a plaintiff states a *prima facie* case of retaliation by demonstrating that (1) he engaged in protected conduct; (2) suffered an adverse employment action; and (3) a causal connection exists between the first two elements. Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (en banc). Upon establishing a *prima facie* case of retaliation, the burden shifts to the employer to show a legitimate non-retaliatory reason for the adverse employment action. Thereafter, the burden shifts back to the plaintiff to establish that the employer's rationale is a pretext for the retaliatory conduct. See Cole v. Family Dollar Stores of Maryland, Inc., 811 F.Appx. 168, 172 (4th Cir. 2020); Sanders v. Tikras Tech. Sols. Corp., 725 Fed. App. 228, 229 (4th Cir. 2018).

The burden of persuasion remains throughout the case with the plaintiff to show that "but for" the retaliatory conduct by the employer, the adverse employment action would not have occurred. Gross v. FBL Fin. Servs., 557 U.S. 167 (2009). A plaintiff must establish more than the fact that an employer's alleged retaliatory conduct was a motivating factor. Rather, the retaliation claim fails if the evidence shows that the challenged adverse action would have occurred anyway, even without a retaliatory motive. Gross v. FBL Fin. Servs., 557 U.S. at 178.

Here, Fitzgerald attempts to rely upon the 2014 grievance as evidence of protected activity, but there is no temporal proximity between his complaints of age discrimination in 2014 and his termination. In fact, Fitzgerald made no more complaints to the County for almost three years and enjoyed both a promotion and pay raise during this time – evidence that, in fact, he was not the subject of wrongful retaliation because of the 2014 grievance. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). For purposes of this summary judgment motion, I will accept that Fitzgerald has established a prima facie case that he engaged in protected activity with the 2017 grievance and was later terminated. The primary issue is whether the County had a legitimate non-retaliatory reason to terminate him.

The court recognizes that there are six categories listed on Fitzgerald's termination letter. However, one legitimate non-retaliatory reason standing alone is sufficient to overcome a retaliation claim. It is well settled that the causation standard requires the evidence to show that "but for" a retaliatory motive, the employer would not have taken the adverse action. University of Texas Southwest Medical Center v. Nassar, 133 S. Ct. at 2534 (2013). Here, the parties agree that the brush truck purchase was "the straw that broke the camel's back," essentially the "but for" cause for Fitzgerald's termination. Def. Summ. J. Br. at 4; Pl. Opp. Br. at 9-11; Fitzgerald Dep., 10:17-11:2, 12:6-9. Fitzgerald goes as far to state that "the entire case hinges upon [the brush truck purchase] issue." Pl. Opp. Br. at 10. Also, Fitzgerald's termination letter lists the unauthorized procurement and purchase of the brush truck as the first termination category.

Although the County offers multiple reasons for Fitzgerald's termination, like in Foster v. Univ. of Maryland-Eastern Shore, he must demonstrate that the termination would not have occurred without retaliation. 787 F.3d 243, 252-54 (4th Cir. 2015). In contrast to the plaintiff in

Foster, who produced pretextual evidence for each of the defendant's proffered legitimate reasons, Fitzgerald has not proffered evidence that his violation of the County's explicit purchasing and procurement policy was false or pretextual. Foster, 787 F.3d at 253-254. For these reasons, the court will proceed with analyzing the County's proffered legitimate non-retaliatory reason for Fitzgerald's termination, the brush truck purchase.

To satisfy its burden under McDonnell Douglas, the County offered a legitimate non-retaliatory reason for termination, in which Fitzgerald failed to provide evidence, beyond mere speculation, that the unauthorized purchase of the brush truck is a pretext. Fitzgerald's "but for" cause for his termination was his role in procuring the Glen Wilton brush truck without proper authorization and contrary to Larrowe's direct order. Larrowe Dep., 27:18-28:1; Moorman Dep., 26:14-24; Ferguson Dep., 10:17-11:2, 12:6-9. The County's policy is clear that the only people authorized to purchase items for the County are County Administrators or individuals who receive explicit authorization by delegation of this authorization power. Def. Reply Br., Ex. 1.

A plaintiff may show pretext by demonstrating that an employer's proffered reasons for the termination that are inconsistent, false or based on mistakes of fact. E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001). Here, the issue is whether, under the Purchasing Policy, Fitzgerald had the authority to direct the expenditure of County funds to purchase the brush truck. Fitzgerald argues that the County had full knowledge of the purchase, orchestrated by Chief Britt, and that the County through its purchasing department and with the cooperation of Battalion Chief Ferguson, purchased the truck. Pl. Opp. Br. at 9. Despite the disputed notice of the procurement of the truck, Fitzgerald has not submitted any evidence that he was authorized to purchase a truck on behalf of the County. Fitzgerald contends that Ferguson was involved by providing budgetary updates. Ferguson's role is to maintain the County budget

and to provide budgetary guidance, but he does not have the authority to authorize use of County funds under the Purchasing Policy. Ferguson was only included in the brush truck emails to comment on whether there were available funds. Thus, correspondence with Ferguson does not provide authorization and, as mentioned by the County during oral arguments, explains why Ferguson was not terminated along with Fitzgerald. Further, Britt's last day as County fire chief was on or about November 20, 2017. Therefore, any authority Britt had to approve the purchase (or to delegate to Fitzgerald) ceased upon his departure. At that time, no decision had been made to purchase a specific truck, and Fitzgerald could not have reasonably concluded that he could direct the use of County money to buy the truck after Britt's resignation.

Further, Fitzgerald claims that Larrowe and Ferguson had notice that he intended to procure the truck but took no steps to stop the purchase. Fitzgerald attempts to argue that the failure of the County Administrator and Deputy County Administrator to respond to inquiring emails constituted authorization for the brush truck purchase. The November 22, 2017 email is the only email from Fitzgerald to Larrowe that mentions the procurement of a truck prior to its purchase. Pl. Opp. Br., Ex. 15. At no point in the email exchange does Fitzgerald request authorization for the money to purchase the truck or indicate that he had the power to make the decision to purchase the truck and to use County money for that purpose. Fitzgerald does not ask the current County Administrator to approve of the purchase. Even if the burden were on Larrowe to tell Fitzgerald that he does not have the authority to purchase the truck, this email would not alert Larrowe of the need to do so. By asking questions about the truck and how to purchase the vehicle, Fitzgerald knew that someone other than himself had to authorize the purchase of the truck after Britt's departure.[5]

---

[5] Fitzgerald challenges the County's reliance on Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991), and the conclusion that no retaliation animus existed where the same person who promoted him (Larrowe) also fired him.

I find that no reasonable jury can conclude that Fitzgerald was authorized to purchase the brush truck and that this was a legitimate non-retaliatory reason for Fitzgerald's termination. The County satisfied its burden by presenting a legitimate non-retaliatory reason for the termination, while Fitzgerald failed to satisfy his burden by providing evidence that the unauthorized purchase was a pretext. The County's purchasing policy makes clear that a violation can result in termination. It is not the responsibility of this Court to evaluate whether an explicit policy violation was a good reason for Fitzgerald's termination. DeJarnette v. Corning, Inc., 133 F.3d 293, 298 (4th Cir. 1998).

IV. **CONCLUSION**

Fitzgerald failed to satisfy his burden under the McDonnell Douglas burden shifting paradigm to produce sufficient direct evidence that the reasons given by the County for terminating him were a pre-text for retaliation. For the foregoing reasons, I **GRANT** Defendant's motion for summary judgment and dismiss this case with prejudice. An appropriate order accompanies this memorandum opinion.

Entered:  December 22, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

Fitzgerald contends that Proud applies only in discrimination cases and has never been relied upon to support a dismissal of a retaliation claim. I do not need to determine whether Proud applies here because I find that the County had a legitimate non-retaliatory reason to terminate Fitzgerald for violation of the Purchasing Policy.